DAVID F. and H. M. BRYAN, plaintiffs in error, v. THE SOUTH-WESTERN RAILROAD COMPANY, defendant in error.

(Atlanta, June Term, 1870.)

PLEADING TO MERITS—ADMISSION OF JURISDICTION.*
—When a defendant is sued, and appears and pleads to the merits of the suit, without pleading to the jurisdiction of the Court, and without exception thereto he .thereby admits the jurisdiction of the Court.

CONTRACTS—EVIDENCE OF RECOGNITION OF TRANS-FER—PART PERFORMANCE†—STATUTE OF FRAUDS.—There is sufficient evidence in the record of this case to authorize the jury to find that the defendant made a contract with Crews for the delivery of forty thousand cross ties, to be delivered on the line of the road—to be paid for at the estimated price thereof at the time of delivery—and there is sufficient evidence in the record of the recognition, by the defendant, of the transfer of the contract by Crews to the plaintiffs, and of such part performance of it on their part, as well as on the part of the defendant, as will take the case out of the statute of frauds, and require its performance on the part of the defendant.

SAME—BREACH OF CONTRACT—DAMAGES‡—REMOTE OR

---

See Bryan v. Southwestern R. Co., 37 Ga. 26.

*PLEADING TO MERITS—ADMISSION OF JURISDICTION.
—"In Bryan v. Southwestern R. Co., 41 Ga. 71, it was decided: 'when a defendant is sued, and appears and pleads to the merits of the suit, without pleading to the jurisdiction of the court, and without excepting thereto, he thereby admits the jurisdiction of the court.' Justice Warner, in delivering the opinion in that case, put the decision upon the provision of the law which we have above cited, embodied at that time in the Code, § 3409 (Civil Code, § 5080)," which declares: "If a defendant appear and plead to the merits without pleading to the jurisdiction and without excepting thereto, he thereby admits the jurisdiction of the court." McGahee v. Hilton, 112 Ga. 513, 37 S. E. Rep. 708.

†CONTRACTS—PART PERFORMANCE.—See foot-note to Bryan v. Southwestern R. Co., 37 Ga. 26.

‡MEASURE OF DAMAGES — DIFFERENCE BETWEEN AGREED VALUE AND MARKET VALUE.—"The general rule undoubtedly is that the measure of damages in a contract like this is the difference between the agreed value and the market value of the things contracted for, unless the article have no market value. The case of the Southwestern R. Co. v. Bryan, 41 Ga. 71, was a case of cross ties, an article, the market value of which it is almost impossible to fix, since there is ordinarily but one purchaser in a community. The case of stringers stands on a different footing. Sawed lumber has a distinct market value in almost every community. In this case, however, though there may be evidence before the jury as to the damages which may not be exactly legitimate, yet there was also plenty of evidence to furnish the jury with data for a proper calculation. The number of feet bargained for was proven, the price per thousand feet, and the market price at and after the refusal to receive, were all before the jury." Southwestern R. Co. v. Rowan, 43 Ga. 414.

CONSEQUENTIAL—NECESSARY EXPENSES AS DAMAGES. . —As a general rule, remote or consequential damages are not allowed whenever they cannot be traced solely to the breach of the contract, or unless they are capable of exact computation, such as the profits which are the immediate fruit of the contract, and are independent of any collateral enterprise, entered into in contemplation of the contract; but any necessary expense which one of the contracting parties incurs in complying with the contract, may be recovered as damages.

VERDICT—EVIDENCE TO SUSTAIN—DAMAGES QUESTION FOR JURY—APPELLATE PRACTICE.—Inasmuch as there is no exception to the charge of the Court as to the law applicable to the facts of this case, and there being sufficient evidence in the record to sustain the verdict, and the question of damages for a breach of the contract being one for the jury alone to consider, the verdict is not so excessive as to justify the inference of gross mistake or undue bias on the part of the jury, as to authorize the Court to interfere with it.

72       *Statute of Frauds. Damages. New Trial. Before Judge Harrell. Randolph Superior Court. May Term, 1870.

This case was before this Court before: See 37 Georgia. Reports, 26. Plaintiffs had amended their declarations by charging in one count that the forty thousand cross-ties were to be furnished at twenty-five cents each, and in another that they were to be furnished at the price then usual, and delivered between Dawson in said county, and Wall's Station in Randolph, on the line of said Railroad. At May Term, 1867, of the Court, defendant's counsel had pleaded the general issue, and that the contract (if made) was void, because not in writing nor to be performed within a year.

When the case was about to be tried, plaintiffs' counsel moved to strike the pleas, because they were not sworn to. The Judge said he would do so unless they would then swear to them. Thereupon defendant's counsel moved to dismiss the case because the declaration did not show jurisdiction in said Court, they contending that under the ruling of the Court the defendant had never appeared or pleaded in said cause. The Court overruled the motion, the pleas were sworn to and the trial proceeded. The testimony for the plaintiffs was the same as reported in 37th Georgia Reports, pages 27, et seq., except as follows: Crews said that no price was mentioned in his proposal to Powers; that he told Bryan it was twenty-five cents, because he understood that to be what others were getting. He did not testify on this trial that Powers offered to contract for twenty thousand, or that he, Crews, refused to contract for less than forty thousand, because a smaller contract would not justify the preparations, or that Powers said he would consult the Supervisor as to whether forty thousand were needed. Nor did plaintiffs' counsel read in evidence the letter used on the former trial, but its contents were proved without objection. And another witness testified as Davis did. Plaintiffs testified

Bryan v. Southwestern R. Co

that they had paid the hands in advance, and because of the stopping of said work, they went off owing plaintiffs some $300 00; one of them testified it threw him out of employment, *and that he supposed he lost thereby $1,500 00; they testified that the land, provisions, etc., were bought by them pursuant to said contract and to carry it out; that the land was almost worthless except for timber for cross-ties; that they sold it for $700 00 on credit, and had not collected the money; they paid $150 00, each, for two wagons, $100 00 in gold for axes, bought one thousand pounds of bacon, saws, etc., etc., mules, etc. The bacon was used up by the hands, or stolen after they left, the wagons were worn out, the mules greatly injured, so that one which cost $200 00 sold for $140 00, and the other was worthless, and the other plaintiff devoted much time to the work, his time being worth $100 00 per month.

Heard, who was but an Assistant Supervisor, the President of the Company, Powers and Brantley, were all sworn and examined. They testified that in 1865 the defendant needed many cross-ties and were furnishing some to the Macon and Western Railroad Company, for accommodation, etc., at their cost. Each of them said he had never made any contract with Crews or with Bryan, or either of them. They said the habit was for the agents of the defendant to give to any one wishing to get cross-ties, printed specifications as to the kind of ties, etc., and receive such as were good and needed by them, paying the then usual price. Powers said Crews did propose to furnish ties, but not a particular number, nor at any price; that he never furnished any, nor was he, Powers, ever advised in any way, that Crews had a contract, or had transferred it, or that plaintiffs were working under it; that he paid thirty-five cents for plaintiffs' ties, because that was the price at the time of delivery; knew nothing of plaintiffs' preparations for doing said work, and stopped them, as they did others, because the defendant and the Macon and Western Railroad Company needed no more ties at that time. And Heard testified that while he knew that plaintiffs were getting ties, he supposed they were getting them as others, and not under any special contract. Nor did he or Powers remember the conversations with them, showing that such a special contract was recognized, as testified to by plaintiffs.

*The jury found for the plaintiffs for $2,000 00 and costs. Defendant's counsel moved for a new trial upon the grounds that the Court erred in not dismissing said case for want of jurisdiction considering when and how said motion was made; because the verdict was without evidence to sustain it and contrary to law. The Court granted a new trial and that is assigned as error.

H. Fielder, for plaintiffs in error, cited 37th Georgia Reports, 26. As to the jurisdiction, he cited Irw's Code, sec-

tion 3409. As to Waiver by Pleading: 30th Georgia, 212; 28th, 491; Irw's Code, sections 3662, 3666. As to Conflicting Evidence: 21st Georgia Reports, 261.

A. Hood, Lyon, DeGraffenried & Irvin, for defendant.

WARNER, J.

The error assigned to the judgment of the Court below, is the granting a new trial on the grounds stated in the motion therefor. The defendant appeared in Court and pleaded to the merits of the action without pleading to the jurisdiction of the Court, and without excepting thereto, and thereby admitted the jurisdiction of the Court of Randolph county in which the suit was instituted: Code, 3409. The defendant pleaded the statute of frauds in bar of the plaintiffs' right to recover. By the 1940th section of the Code, it is declared that "any contract for the sale of goods, wares, and merchandise in existence, or not in esse, to the amount of $50 00 or more, except the buyer shall accept part of the goods sold and actually receive the same, or give something in earnest to bind the bargain, or in part payment, must be in writing, signed by the party to be charged therewith, or by some person by him lawfully authorized." The foregoing sentence of the Code does not extend to the following cases, (to-wit:) where the contract has been fully executed, where there has been performance on one side, accepted by the other in accordance with the contract, where there has been such part performance of the contract as would render it a fraud of the *party refusing to comply if the Court did not compel a performance: Code 1941. There is sufficient evidence in the record to authorize the jury to have found by their verdict that the defendant made a contract with Crews in the fall of 1865, for the delivery of forty thousand cross-ties, to be paid for at the time of delivery at the estimated value of the same, and that Crews had transferred that contract to the plaintiffs; that the defendant received from the plaintiffs under that contract, and paid for thirty-four hundred and twelve cross-ties, at the estimated value of the same at the time of the delivery thereof and that the defendant's agents knew that the plaintiffs were getting and delivering the cross-ties under and in pursuance of the Crews contract; and when in June, 1866, the defendant notified the plaintiffs that no more cross-ties would be received from them for the road, one of the plaintiffs insisted on his right to complete the contract, and said that if the company did not allow the plaintiffs to finish it, they would sue the company for a breach of the contract. Heard, the agent of the defendant, did not, at that time, deny the contract, but replied that if they did, it would be impossible for them to get any more cross-ties for that road.

In our judgment, there is sufficient evidence in the record of the recognition of the transfer of the Crews contract to

the plaintiffs, by the defendant, and of such part performance of it by the plaintiffs, as well as on the part of the defendant, as will take the case out of the statute of frauds and require the performance of the contract on the part of the defendant; the more especially, as it appears from the evidence, that the plaintiffs had expended a considerable sum of money in making their, arrangements and preparation for the performance of the contract on their part: Gilmore v. Johnson, 14th Georgia Reports, 683; Chastain v. Smith, 30th Georgia Reports, 96.

In regard to the damages which may be recovered for a breach of the contract, the general rule is, that remote or consequential damages are not allowed whenever they can not be traced solely to the breach of the contract, or unless they are capable of exact computation, such as the profits which *are the immediate fruit of the contract, and are independent of any collateral enterprise, entered into in contemplation of the contract; but any necessary expense which one of two contracting parties incurs in complying with the contract, may be recovered as damages: Code, 2899. The question of damages being one for the jury, the Court should not interfere, unless the damages are either so small, or so excessive, as to justify the interference of gross mistake or undue bias: Code, 2896. According to the evidence contained in the record, the verdict of the jury in this case is not so excessive as to justify the interference of gross mistake or undue bias on the part of the jury, as will authorize the Court to interfere with it and set it aside.

When the verdict of the jury is decidedly and strongly against the weight of the evidence, although there may appear to be some slight evidence in favor of the finding, the presiding Judge may exercise sound discretion in granting or refusing a new trial: Code, 3666. If the verdict is not decidedly and strongly against the weight of the evidence, it is a legal verdict, and the Court has no discretion to exercise, or legal authority to set it aside. Before the exercise of his discretion can be invoked, either to grant or refuse a new trial in such cases, the verdict must be decidedly and strongly against the weight of the evidence.

Let the judgment of the Court below, granting a new trial, be reversed.