## McNEIL v. McNEIL.

While there was strong circumstantial evidence to the effect that prior to the separation of the parties the wife had been guilty of adultery, there was also evidence to contradict this contention; and we can not say that the court abused its discretion in awarding the plaintiff temporary alimony and attorney's fees.

No. 2916.    MAY 20, 1922.

Temporary alimony, etc.    Before Judge Hammond.    Richmond superior court.    October 23, 1921.

Cassie McNeil applied for alimony, alleging that she and her husband, Cornelius McNeil, were married September 1, 1921, and lived together as husband and wife until September 20, 1921, when defendant suggested that she spend the night with her mother, which she did at his request; that on her return home the following morning she found that her husband had removed all his personalty, and piled her clothes on the floor; that her husband then told her to take her clothes and return to her mother, as he was tired of her, and did not expect to live with her longer, as he had given up the house and did not propose to pay any more rent for her or further support her; that this was without cause or fault on her part; and that her husband is an able-bodied man, in the employment of the Southern Railway, earning a salary of $120 per month.    She prayed for temporary and permanent alimony, for reasonable attorney's fees, and for process.

In his answer the defendant admitted the marriage, but alleged that he had since been informed and believed that his wife, at the time of their marriage, had a living husband from whom she had never been divorced.    He further alleged that his wife did not go to her mother's, at his request, as alleged in her petition, but spent the night at her mother's, as she had frequently done, over his protest.    He admits that he removed his goods from their home, but says he did so because his wife, a few days before, had threatened to kill him, and to poison him; and because his wife had, on September 17, 1921, committed adultery with one J. T. Davis, which he had never condoned.    He alleged that his wife had treated him in a cruel and inhuman manner, abusing him, threatening his life, and placing deleterious substances in his food and drink; that he did everything in his power, during the short time he lived with his wife, to please her, having moved on two

different occasions to suit her whims. Each time he provided her with a home, with which she would become dissatisfied, and would not remain and take care of the same, but constantly remained at her mother's. He refused to cohabit with her after she made threats to kill him, and now refuses to live with her on that ground, and on account of her adultery. He denied that he was earning $120 per month, and alleged that he was earning only eighty dollars per month. He prayed for a total divorce.

On the hearing the wife testified to the allegations in her petition. She proved her good character by three witnesses by whom she had been previously employed. She further testified that she did not know a man by the name of Davis, and had never had improper relations with him.

The defendant introduced his sworn answer.

Savannah Hendrix testified that during September, 1921, she lived at 911 Ninth street in the city of Augusta; that the back of her house was just across an open space from the home occupied by one Davis (whose given name she did not know), an unmarried colored man living alone on Bennett's alley, a distance of about fifty feet from the end of her house; that on September 17, 1921, about 12 o'clock, she and Lucy Howard, who had come to spend the night with her, were sitting on the back steps of her home; that she saw Cassie McNeil go from her home, which is on the same side of Bennett's alley as Davis's home, and next door to it, into the home of Davis; that when she walked into the house of Davis he laughed and said, " Come in," that Cassie McNeil then walked into the house of Davis, who shut the door and put out the light, and was there when witness went to bed sometime later. She had known Davis for about two years.

Lucy Howard testified that she was visiting Savannah Hendrix on the night of September 17, 1921, that an unmarried colored man by the name of Davis (whose given name she did not remember) lived alone in the rear of the home of Savannah Hendrix, on Bennett's avenue, the back end of the two houses jutting up a distance of fifty feet from each other, with an open space between them, that she and Savannah Hendrix were sitting on the back steps of the latter's home when they saw Cassie McNeil leave the rear end of her home, which was next door to the Davis home, and go into the house of Davis, who laughed and said,

" Come in," and shut the door and put out the light, and this was about 12 o'clock p. m.

On October 23, 1921, Judge Henry C. Hammond passed an order requiring the defendant to pay the plaintiff as temporary alimony the sum of twenty dollars a month, payable semi-monthly, and to commence it at once; that he pay to J. W. Burch, attorney for plaintiff, as attorney's fees in prosecuting the action, the sum of forty dollars, payable in monthly payments of twenty dollars, the first payment to be made at once. The defendant excepted to this order, on the ground that it had been conclusively established that the wife had committed adultery on September 17, 1921, without condonation on the part of the husband, and that for this reason the judge should have refused to grant the plaintiff temporary alimony or attorney's fees.

*Isaac S. Peebles Jr.,* for plaintiff in error.

*J. W. Burch* and *Pierce Brothers,* contra.

HINES, J. (After stating the foregoing facts.) The wife, no divorce proceedings being pending, applied for temporary and permanent alimony and attorney's fees on the ground that her husband had deserted her and they were living in a bona fide state of separation. The husband answered her petition, and alleged, among other things, that the wife had been guilty of adultery, and that for this reason she was not entitled to alimony. After hearing the evidence the judge granted the wife temporary alimony and attorney's fees, to which judgment the husband excepted upon the sole ground that it was contrary to law and contrary to the evidence, it having been conclusively established that the plaintiff committed adultery on September 17, 1921, which had not been condoned by the husband, and that for this reason the judge should have refused to grant to her any temporary alimony or attorney's fees.

Two witnesses testified in behalf of the husband that they saw the wife at the hour of midnight enter at the rear the home of one Davis, an unmarried man, who resided alone on the adjoining lot to that on which the husband and wife lived, that as the wife approached the rear door Davis laughed and invited her in, when, after she had entered, he shut the door, and the lights were put out. Here the curtain dropped. What occurred is a matter of inference and conjecture. If a married woman at the dead hour

of midnight was seen to enter at the rear the chambers of an un-married man, who lived alone, and who greeted her, as she approached with laughter and an invitation to come in, and who after she had entered closed the door and put out the lights, this is proof sufficient, if the witnesses so testifying were credible, to justify an impartial mind, searching for the truth, to reach the conclusion that the wife had been guilty of infidelity. But the wife proved her good character by several witnesses, and testified that she did not even know a man by the name of Davis, and had not had any improper relations with him. This testimony of the wife produced a conflict in the evidence. The witnesses who testified in behalf of the husband to the improper conduct of the wife could not state the given name of the man Davis with whom she was alleged to have had improper relations, although one of the witnesses testified that she had known him for two years, and that the backs of their houses were opposite each other only a short distance apart.

The evidence of the guilt of the wife being conflicting, and the judge having resolved the matter in favor of the wife, we can not say that he abused his discretion in allowing the wife temporary alimony and attorney's fees. Certainly, we can not say that his judgment is against the uncontradicted evidence in the case. *Hutchins* v. *Hutchins,* 148 *Ga.* 109 (95 S. E. 974); *Parks* v. *Parks,* 126 *Ga.* 437 (55 S. E. 176); *Spooner* v. *Spooner,* 149 *Ga.* 467, 469 (100 S. E. 571); *Ray* v. *Ray,* 120 *Ga.* 25 (47 S. E. 570).

Under this state of the record we are not called on to decide whether adultery of the wife will, under all circumstances, bar her from alimony and attorney's fees, when she applies therefor upon the ground that she and her husband are living in a bona fide state of separation. The curious upon this subject are referred to *Kendrick* v. *Kendrick,* 105 *Ga.* 38 (31 S. E. 115) (prenuptial prostitution); *Williams* v. *Williams,* 114 *Ga.* 772 (40 S. E. 782) (divorce proceedings by wife on the ground of cruelty denied by husband, and defense of adultery undenied by wife; abuse of discretion to allow alimony); *Koch* v. *Koch,* 42 Barb. (N. Y.) 515 (repeated adulteries); *Jennison* v. *Jennison,* 136 *Ga.* 202 (71 S. E. 244, Ann. Cas. 1912C, 441) (adultery of wife subsequent to grant of temporary alimony, prior to grant of divorce, unknown to the husband until after the grant of the same, cause to modify or

review the order) ; *Davis* v. *Davis,* 134 *Ga.* 804 (68 S. E. 594, 30
L. R. A. (N. S.) 73, 20 Ann. Cas. 20) (adultery of the husband,
condoned by the wife) ; Lander *v.* Lander, L. R. P. D. 1891, p. 161
(alimony in spite of adultery without provision dum sola et casta) ;
Edwards *v.* Edwards, L. R. P. D. 1894, p. 33, Squire *v.* Squire, L.
R. P. D. 1905, p. 4 (alimony, although wife guilty of adultery,
granted dum sola et casta) ; *Wilkins* v. *Wilkins,* 146 *Ga.* 382 (91 S.
E. 415) (final decree for permanent alimony can not be reviewed
for previous adultery of the wife) ; *Long* v. *Long,* 147 *Ga.* 771 (95
S. E. 676) (sole cause of separation, infidelity of the wife uncon-
doned by the husband, the wife under such circumstances not
legally entitled to have temporary alimony).

> *Judgment affirmed.   All the Justices concur.*