## A08A0981. COLEMAN v. ARRINGTON AUTO SALES & RENTALS.
### (669 SE2d 414)

PHIPPS, Judge.

Courtney Coleman sued Arrington Auto Sales & Rentals, complaining that Arrington had wrongfully repossessed the car it sold to him. The trial court granted summary judgment to Arrington on the ground that Coleman's breach of contractual payment obligations allowed the repossession. Coleman appeals, but has shown no error. We affirm.

Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law.[1] A de novo standard of review applies to an appeal from a grant of summary judgment, and we view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant.[2]

On April 1, 2005, Coleman purchased a Honda from Arrington. In connection therewith, Coleman signed various documents, including a bill of sale and a note, acknowledging in the latter that failure to pay as promised would cause the Honda to be repossessed. In addition, Coleman executed an installment contract that scheduled his payment obligations.

Arrington later discovered, however, that neither the bill of sale nor the installment contract took into account the agreed-upon trade-in allowance for Coleman's Mazda. Thus, on April 12, Coleman returned to Arrington so that the mistake could be corrected.

In his deposition, Coleman stated that there had been two bills of sale, and he identified his signature on two bills of sale shown him. The bills of sale provided different amounts for the "allowance on trade-in" and for the "balance to be financed." Coleman further deposed that there had been only two installment contracts, and he

---

[1] OCGA § 9-11-56 (c).
[2] *Williams v. Nat. Auto Sales*, 287 Ga. App. 283, 284 (651 SE2d 194) (2007).

identified his signature on the two installment contracts shown him. Notably, the "amount[s] financed" shown on the installment contracts were the same amounts set forth on the bills of sale as the "balance to be financed." Pertinently, both installment contracts expressly scheduled a payment due on April 15, 2005 and 20 monthly payments to begin May 1, 2005, and they both expressly provided that Coleman was giving a security interest in the Honda to secure his payment and performance under the terms.[3]

It is undisputed that Coleman made no payment to Arrington after driving the Honda off the car lot on April 1, and that, because of nonpayment, Arrington repossessed the Honda on May 4, 2005.

Coleman opposed the summary judgment motion filed by Arrington, asserting that he had not been delinquent on any payment obligation as of May 4. Coleman presented an affidavit, wherein he averred that during his return visit to Arrington on April 12, 2005 to correct the mistake concerning the trade-in allowance, he and Arrington reset the first payment date to May 12, 2005. In addition, the record contains Coleman's deposition testimony that "[e]very-thing was redone" when he returned to Arrington on April 12. Coleman deposed that he was told on April 12 that "everything starts from there. My first payment was due on the 12th of May." Coleman admitted, however, that he had no documentation to support his claim. The trial court found that Coleman's testimony created no genuine issue of material fact and granted summary judgment against him.

1. Coleman contends that summary judgment was erroneous because the evidence showed a possibility of a third contract scheduling later payment dates.

(a) To the extent that Coleman's testimony gave rise to an inference that a third contract existed, such inference was eliminated under the rule of *Prophecy Corp. v. Charles Rossignol, Inc.*[4] as an unexplained contradiction of Coleman's deposition testimony that he had signed only two installment contracts. Consequently, such testimony constitutes no probative evidence of a third contract.[5]

(b) Coleman cites allegations in his complaint that he returned to Arrington after the Honda was repossessed to retrieve his personal belongings; that he then discovered that Arrington had re-

---

[3] A sales manager for Arrington explained that the promissory note, the two bills of sale, and the two installment contracts were all dated April 1, 2005 because that was the date that the Honda was purchased and the mistake concerning the trade-in allowance was made.

[4] 256 Ga. 27 (343 SE2d 680) (1986) (where the favorable portion of a party's self-contradictory testimony is the only evidence on a dispositive issue in the case, the opposing party is entitled to summary judgment in the absence of an adequate explanation).

[5] See *Southeast Reducing Co. v. Wasserman*, 229 Ga. App. 1, 3-4 (1) (493 SE2d 201) (1997).

moved paperwork from the car, "including both purchase contracts for the Honda"; and that he thus filed a police report because Arrington refused to return "the contracts" to him. Such allegations constitute no evidence of any third contract.

2. Coleman contends that the trial court erroneously determined that the parol evidence rule rendered inadmissible his testimony that the payment terms were reset on April 12.

Although parol evidence as to the surrounding circumstances is admissible to explain ambiguities and to aid in the construction of contracts,[6] it is not admissible to contradict or construe an unambiguous contract.[7]

> Ambiguity exists where the words used in the contract leave the intent of the parties in question — i.e., that intent is uncertain, unclear, or is open to various interpretations. Conversely, no ambiguity exists where, examining the contract as a whole and affording the words used therein their plain and ordinary meaning, the contract is capable of only one reasonable interpretation.[8]

The existence or nonexistence of ambiguity in a contract is a question of law for the court.[9]

The terms of the promissory note and both installment contracts of record are clear and unambiguous: Coleman was obligated to make payments on April 15, May 1, and thereafter. The trial court correctly found that Coleman's testimony that sought to contradict or vary those terms was inadmissible under the parol evidence rule and thus created no material issue of fact.[10]

Coleman misplaces reliance upon a proposition expressed in *Rosshirt v. Cincinnati Ins. Co.*[11] that "[w]here a contract reduced to writing and properly executed is thereafter lost or destroyed, it is competent to prove by parol testimony what were the substantial terms and provisions thereof."[12] As we have determined in Division 1,[13] there is no competent evidence of the existence of any additional

---

[6] *Kellos v. Parker-Sharpe, Inc.*, 245 Ga. 130, 132 (1) (263 SE2d 138) (1980).

[7] *UniFund Financial Corp. v. Donaghue*, 288 Ga. App. 81, 82-83 (653 SE2d 513) (2007); OCGA § 13-2-2 (1) (parol evidence is inadmissible to add to, take from, or vary a written contract).

[8] *Capital Color Printing v. Ahern*, 291 Ga. App. 101, 106 (1) (661 SE2d 578) (2008) (citations and punctuation omitted).

[9] Id.

[10] See *Kellos*, supra.

[11] 176 Ga. App. 537 (336 SE2d 612) (1985).

[12] Id. at 540 (1) (citation, punctuation and emphasis omitted).

[13] Supra.

or third contract. And as *Rosshirt* further instructs, "[parol] evidence as to the contents of an alleged lost or destroyed [contract] should not be admitted until it is shown that a duly executed original once existed."[14]

*Judgment affirmed. Barnes, C. J., and Johnson, P. J., concur.*

DECIDED OCTOBER 27, 2008.

*Randolph Frails*, for appellant.
*Bell & Bell, David B. Bell, Sharon B. Enoch*, for appellee.

---

[14] *Rosshirt*, supra (citation and punctuation omitted).
[1] OCGA § 51-1-40 (a).